UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>MANUEL HERRERA-OSORNIO,<br><br>Movant. | No. 2:08-cr-454-JAM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Manuel Herrera-Osornio ("movant"), proceeding through counsel, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 324. The government has filed an opposition. ECF No. 335. For the reasons stated hereafter, the motion should be denied.

## Background

On August 20, 2009, a jury convicted movant of: (1) conspiring to distribute and possess with intent to distribute marijuana; (2) possession with intent to distribute marijuana; (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); (4) distribution of marijuana; and (5) manufacturing marijuana. ECF No. 146 at 5-6. Movant appealed his convictions (ECF No. 206) and the Ninth Circuit affirmed (ECF No. 254).

Movant filed his first § 2255 motion, this one proceeding *pro se*, on May 28, 2013. ECF No. 256. Therein, he alleged that his trial counsel rendered ineffective assistance. *Id.* at 12-20.

1

That motion was not ruled upon and, movant filed supplements to it in June of 2016 (ECF No. 290) and November of 2019 (ECF No. 295). Movant raised, *inter alia*, claims pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015) in those supplements. The government moved to dismiss the *Johnson* claims (ECF No. 300) and, in February of 2018, the district court granted the government's motion to dismiss (ECF No. 302).

Movant requested appointment of counsel in October of 2018, ECF No. 311, and court granted the request and appointed counsel, ECF No. 314. The court directed appointed counsel to file an amended § 2255 motion which contained all of movant's claims. ECF No. 322.

Movant, through counsel, has since filed an amended motion and, therein, argues that his trial counsel rendered ineffective assistance by: (1) erroneously advising movant that he could not be charged with illegal possession of a firearm, thereby causing him to reject a plea offer; and (2) failing to call the owner of the truck where the firearm was found as a witness. ECF No. 324.

## Legal Standards

I. <u>Motions Pursuant to 28 U.S.C. § 2255</u>

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.") Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346. *See also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

Claims or arguments raised on appeal are not cognizable in a § 2255 motion. *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (claims previously raised on appeal "cannot be the basis of a § 2255 motion."); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding."). *See also Davis v. United States*, 417 U.S. 333, 342 (1974) (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law). Conversely, claims that could have been, but were not, raised on appeal are not cognizable in § 2255 motions. *United States v. Frady*, 456 U.S. 152, 168 (1982( (a collateral challenge is not a substitute for an appeal); *Sunal v. Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal"); *Unites States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal"). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (same). "Ineffective assistance of counsel constitutes 'cause' for failure to raise a challenge prior to section 2255 collateral review." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993).

Claims challenging the sufficiency of the evidence are not cognizable in § 2255 motions. *See United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (movant's "evidence-based" claim that "called into doubt the overall weight of the evidence against him" was not cognizable in § 2255 motion); *Barkan v. United States*, 362 F.2d 158, 160 (7th Cir. 1966) ("a collateral proceeding under section 2255 cannot be utilized in lieu of an appeal and does not give persons adjudged guilty of a crime the right to have a trial on the question of the sufficiency of the evidence or errors of law which should have been raised in a timely appeal"); *United States v. Collins*, 1999 WL 179809 (N.D. Cal. Mar. 25, 1999) (insufficiency of the evidence is not a cognizable attack under section 2255).

## II. Ineffective Assistance of Counsel Claims

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) her counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 562 U.S. at 106. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

/////

4

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434.

## Analysis

### I. Failure to Advise Movant as to Potential Firearm Charge

As noted *supra*, movant argues that, in weighing whether to accept a government plea deal that carried a five-year prison term, his counsel erroneously told him that the government could not charge him with illegal possession of a firearm. He now claims that, "[h]ad I known the government could charge me with the gun I would have taken the five year offer." ECF No. 324 at 39. The record evidence, however, indicates that movant knew or should have known that he faced a potential firearm charge if he declined the five-year offer.

On May 29, 2009, government counsel e-mailed defense counsel and stated:

> If you have a moment, will each of you please call me . . . I'd like to figure out what we're going to do on Tuesday, and . . . discuss the possibility of a wired, group deal – one last shot, for the sake of efficiency . . . . If we can't reach a group deal, we'll probably supersede the indictment next week. We are still reviewing the evidence, but it looks like we will charge Sixto and Manuel Herrera-Osornio with a 924(c) for the gun in their vehicle. That increases their exposure to 15 years each (Osornio: 10 for the grow (with 5 concurrent for the dope), and 5 for the gun).

ECF No. 335-2 at 7. Days later, on June 2, 2009, the court held a confirmation hearing at which

movant was present. ECF No. 309 at 3.[1]  At that hearing, government counsel discussed the likelihood of adding a firearm charge under § 924(c):

> **Government Counsel:** Your Honor, as the Court is - - well, as the parties are aware, the current offer in this case is for each of these three defendants to plead to Count 3 of the indictment which carries a five-year mandatory minimum. That sentence, of course, could be reduced further by cooperation. They are, of course, free at any time to plead to the indictment as it stands. However, as we've talked about, on Thursday, June 4th, we expect to supersede the current indictment with an indictment that's fairly similar, although it charges an additional 924(c) count as to each defendant. That will add an additional five-year mandatory minimum consecutive sentence for each of the three defendants.
>
> . . .
>
> So what that really means is that Thursday for us is a drop-dead date. They have a chance up until Thursday to plead to a five-year charge which could be reduced by cooperation. After Thursday, each of the defendants will be looking at a very different posture for trial. . . . Mr. Manuel Herrera-Osornio will also be looking at 15 years of mandatory minimum time.
>
> . . .
>
> So as we've talked with the defense counsel, if there's a wired agreement prior to close of business on Wednesday, June 3rd, if we have a wired agreement where all three defendants choose to plead guilty to a five-year charge, then we will not supersede. But if we don't hear from the defendants by Wednesday, we will supersede with the additional charges . . .

ECF No. 309 at 9-10. Based on the foregoing, movant had, or should have had, knowledge on June 2, 2009 that the government could (and likely would) bring a firearm charge against him. Moreover, at the time of the confirmation hearing, he still had an opportunity to take advantage of the government's five-year offer which he now states he would have accepted had he known that a firearm charge was forthcoming.

Additionally, movant's trial counsel – John Manning – has provided an affidavit in which he unequivocally states that:

> Mr. Herrera was advised (through a court certified Spanish interpreter) repeatedly and in no uncertain terms: (1) the government

---

[1] "**MR. MANNING**: Good morning, your Honor. John Manning on behalf of Mr. Osornio who is present in custody using the assistance of the Spanish language interpreter. He's the gentleman in the middle." ECF No. 309 at 3.

> most certainly can (and will/would) charge him with possession of a firearm in violation of 18 U.S.C. § 924(c)(1); and (2) if the government did charge him with a violation of 18 U.S.C. § 924(c)(1), he would most certainly be convicted of that county/charge.

ECF No. 335-1 at 2, ¶ 8. Further, and consistent with the representations of government counsel at the June 2, 2009 confirmation hearing, Manning states:

> Mr. Herrera was repeatedly advised a § 924(c)(1) conviction would add an additional five years consecutive to any other sentence he received. Mr. Herrera was advised, repeatedly, he was facing a likely sentence of at least 15 years in custody if he went to trial and was convicted on all counts (including the (§ 924(c)(1)).

*Id.* at 2, ¶ 9.

In light of the foregoing, the court finds that movant has failed to carry his burden of establishing either of *Strickland*'s prongs. Movant has not offered any evidence, other than his own affidavit, which indicates that his counsel failed to advise him of the forthcoming charges under § 924(c)(1). *See Womack v. McDaniel*, 497 F.3d 998, 1004 (9th Cir. 2007) ("Other than Womack's own self-serving statement, there is no evidence that his attorney failed to discuss potential defenses with him."). Moreover, regardless of his private discussions with trial counsel, movant was made aware at the June 2, 2009 hearing that the government intended to bring the weapon charge against him in a superseding indictment if he did not promptly accept the five-year offer. He could have accepted the government's five-year offer after that hearing. He chose not to and, thus, he cannot demonstrate prejudice.[2]

/////

/////

/////

---

[2] The court notes that the fundamental basis of movant's claim is that he believed the government could not *charge* him with the § 924(c) violation. The court interprets this claim to mean what it says. That is, it is not a claim that his trial counsel advised him that the government's § 924(c) case against him was weak. Movant is alleging that he labored under the mistaken belief that the law did not allow the government to bring the § 924(c) charge against him *at all*. *See* ECF No. 324 at 38 ("Based on Mr. Manning's advice, I believed I could not be charged with the gun."). Movant should have been totally disabused of that notion once government counsel indicated (on the record and in movant's presence) that those charges were forthcoming if movant did not agree to the five-year deal.

7

## II. Failure to Call Juan Luis Mendoza-Corrales

Next, movant argues that his trial counsel rendered ineffective assistance by failing to present witness testimony from co-defendant Mendoza-Corrales. He notes that Mendoza-Corrales owned the truck where the gun was found. ECF No. 324 at 33. Movant offers his belief that Mendoza-Corrales may have been willing to testify that the gun belonged to him, that he carried it regularly, and that it was not brought to the relevant drug deal for any particular purpose. *Id.*

The government correctly notes that movant has not offered any evidence that Mendoza-Corrales would have offered the helpful testimony he now stakes this claim upon. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) ("Dows provides no evidence that this witness would have provided helpful testimony for the defense - i.e., Dows has not presented an affidavit from this alleged witness."). And Mendoza-Corrales was not someone on whom movant could definitively rely for support. In Manning's affidavit, he notes that Mendoza-Corrales "initially cooperated with law enforcement and provided a statement indicating [that] Mr. Herrera was directly responsible for the weapon in Mr. Mendoza-Corrales' vehicle, but that Mr. Herrera was directly responsible for the weapon being in the vehicle at the time of the arrest." ECF No. 335-1 at 4, ¶ 17.[3] Manning also asserts that it was his professional estimation that movant potentially had a great deal to lose by calling Mendoza-Corrales. He notes:

> At trial, the government rested without calling any of the cooperators, including Mr. Mendoza-Corrales. As such, there was no testimony regarding who was responsible for (and had knowledge of) the gun; nor was there any testimony (from an "insider"…aka…"cooperator") as to Mr. Herrera's role in the offense. One of the government's key witnesses had failed to identify Mr. Herrera. (That is, a Supervisor with the El Dorado County Sherriff's Office, failed to identify Mr. Herrera.) Finally, there was no testimony directly linking Mr. Herrera to the firearm found in the vehicle in which he was a passenger.

---

[3] Mendoza-Corrales subsequently recanted this statement. ECF No. 335-1 at 4-5, ¶19. However, there was no guarantee as to what his testimony, if any, might have been if movant's counsel had called him as a witness. Indeed, Mendoza-Corrales' attorney represented that he would have advised his client to assert his Fifth Amendment right against self-incrimination if he were called. *Id.* at 5, ¶19.

8

> I advised Mr. Herrera calling Mr. Mendoza-Corrales would (assuming Mr. Mendoza-Corrales actually testified) put evidence in front of the jury that was significantly adverse to Mr. Herrera. I advised Mr. Herrera, as I had previously done on more than one occasion, I was not going to call Mr. Mendoza-Corrales as a witness.

*Id.* at 5-6, ¶¶ 20-21. In light of Manning's relation of his strategic rationale for not calling Mendoza-Corrales, the court finds that movant has failed to carry his burden of establishing deficient representation. *See Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."); *see also Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) ("The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess. Thus, counsel's decision as to whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation.") (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam) and *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)) (internal quotation marks and citations omitted).

## Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 324) be DENIED;

2. The Clerk be directed to close the companion civil case, No. 2:17-cv-2411-JAM-EFB P; and

3. The Clerk be directed to enter judgment accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections movant may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing § 2255 Proceedings (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: March 20, 2020.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE